M. J. COPPOCK, Appellant, v. LEWIS LAMPKIN, Constable.

**Alteration of Writings:** PLEADING AND EVIDENCE. Evidence to show
1    alteration of a written instrument is admissible, without allegation of alteration in the pleadings, where the instrumnt is merely introduced in evidence, and not referred to in the pleadings.

**Evidence:** ADMITTED SIGNATURE OF ONE CHARGED WITH ALTERING SIGNATURE. Under Code, section 4620, authorizing comparison between handwriting the genuineness of which is in contro-
2    versy and writings of the same person which are proved to be genuine, it is competent to compare admitted signatures of a husband with the signature to a contract alleged to have been signed by his wife, for the purpose of showing that the name was originally written by the husband, and afterwards altered to make it appear to be that of the wife.

IRRELEVANCY: *Waiver.* Where irrelevant evidence had been given
3    by both parties without objection by either, the admission of further irrelevant evidence on the same subject is not prejudicial error.

**Instructions:** THEORY OF TRIAL. Where a replevin suit had been tried on the theory that the property belonged to the person owning certain land, an instruction that the finding as to the ownership of the replevined property depended on the finding as to ownership of the land was not error.

*Appeal from Plymouth District Court.*—HON. F. R. GAYNOR, Judge.

### WEDNESDAY, OCTOBER 16, 1901.

ACTION of replevin to recover personal property consisting of certain wheat, oats, and corn raised on certain described land claimed by plaintiff to belong to her. Defendant took possession of the property as constable under execution against the property of H. J. Coppock, the husband of plaintiff, and the question is whether the property belonged to the husband or wife. Judgment on verdict for defendant. Plaintiff appeals.—*Affirmed.*

*Zink & Roseberry* for appellant.

*R. H. Brown* and *McDuffie & Keenan* for appellee.

McCLAIN, J.—Appellant, for the purpose of showing title to the grain in controversy, introduced in evidence the contract for conveyance of the land to her from one Boynton, purporting to have been executed two years before, under which she claims to have occupied the premises. Defendant sought to show, over plaintiff's objection, that the instrument had been altered by erasures so as to substitute therein the name of appellant in place of that of her husband. Appellant says that this evidence was not admissible in the absence of any denial of the genuineness of the signature; but the instrument was not in any way referred to in the pleadings, and the defendant had no occasion to attack it until offered. The husband of the appellant, being called as a witness, admitted the genuineness of his signature to certain

instruments not in any way material to the matter in issue, and expert witnesses were then asked, over appellant's objection, to compare such signature with the middle initial and last name of the signature to the contract to convey above referred to, purporting to be the signature of Mrs. Coppock, for the purpose of showing that such instrument had originally been signed by the husband, and the signature afterwards altered so as to make it appear to be that of the wife. At common law, according to the weight of authority, it is not competent to introduce in evidence extraneous documents for the sole purpose of instituting a comparison between the signatures thereof and the signature in question, to show whether or not the latter is genuine. *Hickory v. U. S.,* 151 U. S. 303 (14 Sup. Ct. Rep. 334, 38 L. Ed. 170) ; *Williams v. Conger,* 125 U. S. 397 (8 Sup. Ct. Rep. 933, 31 L. Ed. 778). But our statutes authorize comparison between the handwriting the genuineness of which is in controversy and "writings of the same person which are proved to be genuine." Code, section 4620. Under this statute it would apparently not be competent to introduce in evidence signatures of other persons than the person whose pretended signature is in question for the purpose of showing by such comparison that the signature is not the genuine signature of such person, but is the signature of some one else. *Peck v. Callaghan,* 95 N. Y. 73. But in this case it was proper for the defendant to show that the land in question belonged to the husband, and, as affirmative evidence of that fact, we think it was competent for him to prove that the contract to convey was originally executed to him, and that it was subsequently altered by fraud.

Defendant was allowed, over appellant's objection, to introduce in evidence a bill of sale from the husband to the wife executed a year prior to the rendition of the judgment against the husband under which the levy was made, covering personal property not in any way involved in the levy; also a chattel mortgage on some corn

supposed to be a part of the property levied on, which mortgage was executed by the husband to a third party subsequent to the levy.   It is difficult to understand on what theory these instruments were admitted, but we are inclined to think that their admission was without prejudice.   Mrs. Coppock had already been cross-examined without objection as to what personal property she had during the preceding year, and her husband had likewise been cross-examined as to his reason for giving this mortgage on corn which he claimed did not belong to him.   The parties had without objection gone into the whole question of the ownership of the land and the crops raised thereon, and as to whether the wife or the husband was managing the farm.   As bearing on the issues thus before the court, these instruments were perhaps admissible.   At any rate, their admission was clearly not prejudicial.

Objection is taken to an instruction in which it is claimed that the jurors were told that their finding as to the ownership of the grain levied on would depend upon their conclusion as to the ownership of the land.   While this would not be a correct rule of law in all cases, it was not erroneous under the evidence; for the case had been tried on the theory that the grain belonged to the person—husband or wife—owning the land.   It was not pretended that the wife owned the grain, except as she claimed to be the owner of the land on which it was raised.—AFFIRMED.