UNITED CATTLE LOAN & LIVE STOCK COMPANY, Appellant, v. C. W. RANDALL, Appellee.

**PLEADING:** Issues, Proof, and Variance—Nonpaper Issues. Parties who voluntarily try their case on the theory that an issue is in the case, even though not formally contained in the written pleadings, may not complain that the court covers such issue in the instructions.

**TRIAL:** Instructions—Nonassumption of Controverted Facts. Instruction reviewed, and held nonassumptive of issuable facts.

*Appeal from Mahaska District Court.—*D. W. HAMILTON, Judge.

November 11, 1924.

Action in replevin. Plaintiff sought to recover possession of about 60 head of cattle under a chattel mortgage given to plaintiff by Burrier Bros. The cattle were being pastured on defendant's land, who claimed a lien thereon, and refused to surrender the cattle. They were replevined and sold. Defendant contends that plaintiff agreed to pay the pasturage. Trial to a jury. Verdict for defendant for $588.05. The plaintiff appeals.—*Affirmed.*

Devitt & Eichhorn, for appellant.

H. H. Sheriff and T. J. Bray, for appellee.

Preston, J.—1. There was a conflict in the evidence as to questions of fact litigated, which made the case one for the jury. The appellant contends that the instructions went beyond the issues, and were not covered by the pleadings; that two of the instructions were conflicting; and that one of them was coercive. The issues raised by the pleadings, stated as briefly as may be, are that plaintiff holds a chattel mortgage; that plaintiff, under the mortgage, has taken possession of all cattle covered thereby, except those in controversy, in possession of defendant; that the cause of detention is that defendant claims to have a lien on the cattle for pasturage; that defendant wrongfully refuses to deliver the cattle to plaintiff.

*1. Pleading: issues, proof, and variance: non-paper issues.*

Answering, defendant admits that he claims a lien, and affirmatively alleges that, on May 2, 1921, the Burriers delivered the cattle to defendant for pasturage under a parol agreement by which defendant was to pasture said cattle for $2.00 per head per month, to be paid upon the removal of the said cattle; that, on May 8th, the Burriers transferred their interest in the cattle to plaintiff; and that, as a part of the consideration for the transfer, the plaintiff orally agreed to pay the charges for pasturing the cattle, as agreed upon by the defendant and Burrier Bros.; and that defendant is entitled to $524 for such pas-

turage, and is ready and willing to deliver said cattle to the plaintiff upon payment thereof.

The cattle remained in defendant's pasture until September, 1921, when they were replevined. Thereafter, on October 5th, the plaintiff and the Burriers stipulated in writing that the cattle then in possession of plaintiff might be sold; and this provision for sale was in lieu of the provision in the chattel mortgage in respect to sale.

The trial court, in Instruction No. 1, stated the issues practically as set out in the pleadings. Instruction No. 5, of which complaint is made, reads:

"It is claimed by the defendant that, on or about the 8th day of May, 1921, Burrier Brothers turned the cattle in controversy over to the plaintiff, and that thereafter the plaintiff was the owner of the cattle, and that, on or about said date, the plaintiff, through its officers and agents, agreed to pay the defendant for pasturing said cattle. You are instructed that the burden is upon the defendant to establish this claim upon his part by a preponderance of the evidence; and if, under the evidence, and by a preponderance thereof, the defendant has satisfied you that the plaintiff, or if the defendant has satisfied you by a preponderance of the evidence that the plaintiff through its officers or agent, agreed with the defendant that they would pay the pasturage on these cattle, even though the cattle were not turned over to them by the said Burrier Brothers, and they continued to hold them under the chattel mortgage, yet, if the officers or agents of the company told the defendants, on or about the 8th day of May, 1921, that the plaintiff would pay the pasturage until they could get cheaper pasture for the cattle, your verdict must be against the plaintiff."

The exception to Instruction 5, made after verdict and in the motion for new trial, was that, having first instructed in regard to the claim by defendant that the Burriers turned the cattle over to plaintiff on May 8th, the court went on and submitted another defense in the last part of the instruction, where it was said:

"Or if defendant had shown that plaintiff agreed with defendant that they would pay the pasturage on the cattle even

though the cattle were not turned over to them, or that they would pay the pasturage until they could get cheaper pasturage,'' etc.

There was a conflict in the evidence as to whether plaintiff did so agree. It is not claimed that, if plaintiff did so agree, it would not be liable for the pasturage as long as the cattle remained there. The claim is that the court instructed on a matter which was not put in issue by the pleadings. Of course, the general rule is as contended by appellant. Appellee so concedes. But it appears that evidence to which the latter part of the instruction was applicable, went in without objection. It does not appear that, at that time, the court knew the exact state of the pleadings. The court's attention, so far as we know, was not called to the exact situation by objection or otherwise, as to its relevancy. When the court came to prepare the instructions, naturally he would go to the pleadings, and state the issues in accordance therewith. Still, the evidence was in, and it was proper for the court to dispose of it in some way. There was no motion to exclude. The case seems to have been tried on the theory of such an agreement as stated in the latter part of the instruction, as well as that in the first part. As said, there was evidence on both theories. There appears to have been voluntary litigation of that issue, although perhaps, strictly speaking, it was not covered by the pleadings. The difference in the two claims is not, after all, very marked. Under the circumstances, we think there was no error of which appellant can complain. Some of our prior cases sustaining this conclusion are *Hanson v. Kline,* 136 Iowa 101, 112; *Seevers v. Cleveland Coal Co.,* 158 Iowa 574, 591; *Coppock v. Lampkin,* 114 Iowa 664, 667; *Harris v. Beebe,* 144 Iowa 735, 738; *Shoemaker v. Turner,* 117 Iowa 340; *Fenner v. Crips Bros.,* 109 Iowa 455; *McLeod v. Thompson,* 138 Iowa 304. We think these and other like cases are controlling, rather than *Eller v. Loomis,* 106 Iowa 276, 280, cited by appellant, where we said that the fact that certain evidence was admitted without objection ''would not justify the instruction, if otherwise erroneous. * * * The admission of immaterial evidence will not justify the presentation of new issues in the instructions.''

As said, it is not claimed in this case that Instruction 5 is otherwise erroneous. The evidence was material. The question presented is whether it was relevant.

A further exception to No. 5 is that it is in conflict with Instruction No. 1, wherein the court stated the issues. This has been sufficiently referred to.

2. After the jury had retired, and had been out for a time, they sent a written communication to the judge, saying:

"We, the jury, might agree if we could compromise by charging the Cattle Loan & Live Stock Company only for the pasturage with Mr. Randall from July 5th, when the mortgage fell due, until September 8th, when the cattle were taken away."

In response to this, the trial court gave an additional instruction in this wise:

"The court has received your communication hereto attached, and will say to you that the due date of the mortgage has nothing to do with the question of the liability of the plaintiff for the rent claimed. The court further states to you that, if you find by a preponderance of the evidence that, on or about the 8th day of May, 1921, the plaintiff company, through its officers or agents, told the defendant that the company would pay the pasture charges of the defendant until the cattle were removed, then the plaintiff would be liable for the charge for pasturing of said cattle, whether they had been turned over to the plaintiff or whether they were turned over at a later date; the time when the cattle were turned over to the plaintiff being immaterial if you have found that the plaintiff, by its officers or agents, agreed to pay for the pasture."

It does not appear how long the jury had been out, except that a statement in reference thereto is made in the exceptions to instructions, nor how soon they came in, after the additional instruction. The exception to the additional instruction is that it had the effect of coercing the jury into agreeing upon a verdict, and that it permits the jury to find upon an issue upon which there is no plea, and that the court was in error in stating therein that the time when the cattle were turned over to plaintiff was immaterial *if* the jury should find that the plaintiff agreed to pay for

2. TRIAL: instructions: nonassumption of controverted facts.

the pasture, because it assumes that the jury had found that the officers had agreed to pay; and that the only defense set up in the answer was an allegation that plaintiff was liable for pasture rent because plaintiff had turned over the cattle under an agreement with the Burriers; and further, that the effect of the instruction was to coerce the jury into agreeing to a verdict.

As to the pleadings, we have already considered that. We think the trial court did not assume the fact, as claimed. We are unable to see anything in the instruction that would tend to coerce the jury; and, as said, there is nothing to indicate how long the jury was out, either before or after the giving of this instruction. It is evident that the jury was confused as to the due date. The instruction was germane to and explanatory of that proposition.

We discover no error. The judgment is—*Affirmed.*

ARTHUR, C. J., and EVANS and FAVILLE, JJ., concur.