(February 28, 1921.)

## W. T. WILSON, Appellant, v. SUNNYSIDE ORCHARD COMPANY, Respondent.

[196 Pac. 302.]

CONTRACT FOR SALE OF AGRICULTURAL LAND—EXPRESS WARRANTY OF QUALITY OF SOIL—RESCISSION—LACHES—WAIVER—VENDEE'S LIEN —RESTORATION OF PREMISES.

    1. When the vendor of real estate expressly warrants that the soil is practically free from alkali, and agrees to return to the purchaser the contract price paid should it prove to have alkali

sufficient to harm its productiveness materially in the production of grain, hay, vegetables and fruit, provided it is properly drained and farmed, an action to recover on such warranty, although brought in an equitable form, is not barred by the lapse of time short of the period of the statute of limitations, unless the delay has been inexcusable, and special circumstances exist which would make recovery inequitable.

2. The right of the vendee to recover on such warranty is not waived by going into possession of the land, with knowledge that the soil is impregnated with alkali to the extent mentioned in the warranty, or by cultivating the land or by making a cropping contract in regard to it.

3. Cancelation of outstanding notes for the remainder of the purchase price, and a vendee's lien for the instalments on the purchase price already paid, result from a recovery on such warranty.

4. From the fact that the warranty provides for a return of the purchase money paid in the event of its breach, a resulting rescission of the contract is necessarily implied in order to prevent the vendee from getting back his money and keeping the land. Such rescission is not a condition precedent to the vendee's right to recover the purchase price, but a result flowing therefrom.

5. Failure of plaintiff to restore possession of the land, or tender it prior to commencement of suit, is not fatal to plaintiff's recovery on such warranty. The court in its decree will impose such conditions for defendant's protection as may be just.

APPEAL from the District Court of the Seventh Judicial District, for Washington County. Hon. Ed. L. Bryan, Judge.

Action on contract of warranty. Judgment for defendant. *Reversed and remanded.*

Lot L. Feltham, for Appellant.

In the case of agricultural lands, a contract for their purchase may be rescinded by the vendee on discovering that he had been deceived by false representations of the seller as to the character, fertility or chemical composition of the soil, as to its adaptability to the growing of particular crops. (2 Black on Rescission, sec. 425, p. 1052; *Becker v. Sunnyside*

*Land & Inv. Co.,* 76 Wash. 685, 136 Pac. 1147; *Field v. Hood Riv. Orchard Land Co.,* 75 Or. 223, 146 Pac. 98.)

"Mere delay in asserting a right, short of the limitation fixed by statute, does not bar the right in equity." (*Luddington v. Patton,* 111 Wis. 208, 86 N. W. 572.)

"Whether plaintiff rescinded promptly did not depend alone on the lapse of- time, but on all the circumstances." (*Beardsley v. Clem,* 137 Cal. 328, 70 Pac. 175; 2 Black on Rescission, sec. 536, p. 1264; 9 Cyc. 435, and cases cited.)

The bringing of an action to recover money paid is sufficient evidence of an election to treat the contract as rescinded. (6 R. C. L., sec. 315, and notes.)

When a purchaser is entitled to call for a good title, his taking possession with the concurrence of the vendor will not amount to a waiver of any right. (1 Sugden on Vendors, p. 518.)

The plaintiff was entitled to a lien upon these lands and the capital stock in the Sunnyside Irrigation Co. as security for the repayment to him of the purchase money paid under these contracts. (*Wickman v. Robinson,* 14 Wis. 493, 80 Am. Dec. 789; *Taft v. Kessel,* 16 Wis. 273; *Ihrke v. Continental L. Ins. & Inv. Co.* 91 Wash. 342, 157 Pac. 866, L. R. A. 1916F, 430; *Bullitt v. Eastern Ky. Land Co.,* 99 Ky. 324, 36 S. W. 16; *Stewart v. Wood,* 63 Mo. 252; *Davis v. Rosenzweig Realty Operating Co.,* 192 N. Y. 128, 127 Am. St. 890, 84 N. E. 943, 20 L. R. A., N. S., 175; *Speicher v. Lacy,* 28 Okl. 541, 115 Pac. 271, 35 L. R. A., N. S., 1066.)

When the vendor refuses peremptorily to rescind the sale, no legal tender is necessary. (*Simon v. Burnett,* 8 La. Ann. 84; *Tibbs v. Timberlake,* 14 Ky. (4 Litt.) 12.)

"In an equitable action to rescind a contract, it is not essential that a tender back of the property be made; the court will take into consideration the offers made before trial, at the trial, and in the pleadings, and make proper provisions in the judgment therefor." (*Smith v. Howlett,* 21 Misc. Rep. 386, 47 N. Y. Supp. 1002; *Smith v. Howlett,* 29 App. Div. 182, 51 N. Y. Supp. 910; *Nelson v. Hatch,* 67 N. Y. Supp. 570; *Halpin v. Mutual Brewing Co.,* 20 App.

Div. 583, 47 N. Y. Supp. 412; *Ludington v. Patton, supra;*
*Martin v. Martin,* 35 Ala. 560; *Perry v. Boyd,* 126 Ala.
162, 85 Am. St. 17, 28 S. W. 711.)

Edwin Snow and B. S. Varian, for Respondent.

A party entitled to the rescission of a contract must act
with reasonable promptness on discovery of the facts en-
titling him to rescind. (*Faulkner v. Wassmer,* 77 N. J. Eq.
537, 77 Atl. 341, 30 L. R. A., N. S., 872; *Evans v. Duke,*
140 Cal. 22, 73 Pac. 732; *Slothower v. Oak Ridge Land Co.*
(Va.), 27 S. E. 466; *Owen v. Pomona Land & Water Co.,*
131 Cal. 530, 63 Pac. 850, 64 Pac. 253.)

"A purchaser's right to rescind the purchase of real estate
is deemed to have been waived if he, with knowledge of the
facts authorizing a rescission, exercises such rights of owner-
ship over the property as to lease it." (*Shappirio v. Gold-
berg,* 192 U. S. 232, 24 Sup. Ct. 259, 49 L. ed. 419; *Precious
Blood Society v. Elsythe,* 102 Tenn. 40, 50 S. W. 759; *Pol-
lock v. Smith,* 49 Neb. 864, 69 N. W. 312; *Lockbridge v.
Foster,* 5 Ill. 569; 2 Black on Rescission, sec. 597.)

"A vendee under an executory contract cannot rescind
and recover back payments while retaining possession of the
land." (*Sievers v. Brown,* 34 Or. 454, 56 Pac. 170, 45
L. R. A. 642; *Vaughn v. Smith,* 34 Or. 54, 55 Pac. 99;
*O'Donnell etc. Brewing Co. v. Farrar,* 163 Ill. 471, 45 N. E.
283; *Haynes v. White,* 55 Cal. 38; *Herman v. Haffenegger,*
54 Cal. 161; *Gates v. McLean,* 70 Cal. 42, 11 Pac. 489;
*Rhorer v. Bila,* 83 Cal. 51, 23 Pac. 274; *Hammond v. Wal-
lace,* 85 Cal. 522, 20 Am. St. 239, 24 Pac. 837.)

McCARTHY, J.—Appellant's predecessors in interest and
respondent entered into a contract, by which the former
agreed to buy and the latter to sell the lands and water right
involved. Respondent was to plant an orchard, remain in
possession and control and care for it for five years and re-
tain the crops. Appellant's predecessors made an initial
payment and agreed to pay the balance in six annual in-
stalments. The contract provides for a forfeiture of all

rights and of any amounts paid, upon default in any of the agreed payments. In March, 1912, the contract was modified by the addition of the following writing indorsed thereon:

"We hereby guarantee the land described in the within contract to be practically free from alkali, and should said land prove to have alkali sufficient to harm the productiveness of the land materially in producing grain, hay, vegetables and fruit, provided said land is properly drained and farmed, the undersigned will return to the holder of this contract the purchase price paid for said land."

This amounts to an express warranty of the character of the soil.

Appellant acquired individually a one-sixth interest in the contracts in November, 1913, and all of the interests in February, 1916. On January 1, 1916, he took possession on behalf of himself and others interested, and maintained possession thereafter. On February 28, 1916, he made a written demand on respondent for a return of all moneys paid on the contracts and a cancelation of the notes representing the remaining instalments, on the ground that the land was so impregnated with alkali as to materially harm its productiveness in producing grain, hay, vegetables and fruit. This demand not being met, on March 18, 1916, he brought this action. In the complaint he sets out the original agreement, the subsequent warranty, the breach of the condition of the warranty in regard to alkali, his demand and the failure of respondent to meet the same, alleges that he elects to annul the contract, and, as relief, asks for the instalments of the purchase price already paid and a lien upon the premises to secure the same, and for the cancelation of the notes representing the remaining instalments and for the rescission of the contracts. Respondent in its answer denies any breach of the condition of the warranty, and sets up that appellant, with full knowledge of the existing conditions, has waived his right to rescind or to any relief on account of the warranty. In a cross-complaint it alleges that several of the notes are past due and unpaid, that it has complied with its contract, and asks the court to decree that unless

said remaining payments are made within sixty days of the decree, all rights of appellant under the contracts be forfeited upon respondent surrendering up the unpaid notes. To this cross-complaint, appellant filed an answer, incorporating all the allegations of his complaint, including those in regard to the breach of the warranty.

The court treated the action as equitable, and submitted to the jury this interrogatory: "Has the land alkali sufficient to harm its productiveness materially in producing grain, hay, vegetables and fruit, provided it is properly farmed and drained?"

The jury answered "Yes."

The court then made findings, adopting the finding of the jury as to the alkali character of the land. The court also found, first, that appellant did not act with sufficient promptness after discovering the condition of the land; second, that he and his predecessors paid instalments and permitted respondent to improve the orchard after learning the condition; third, that he entered into possession of the land, knowing of the condition; fourth, that he leased the land, and fifth, that he did not offer or tender possession of the land to respondent before bringing suit. From these facts the court concluded that appellant had waived his right to rescind and was not entitled to any relief sought, but that respondent was entitled to judgment on its cross-complaint. Judgment was rendered accordingly.

An action on a promissory note is one at law, but if the promissory note is secured by a mortgage, a suit to foreclose is in equity. So in the present case, a simple action for breach of the warranty would be at law, but when the vendee asks for a lien and for cancelation of the notes, the suit is one in equity. It is not, however, an action for specific performance as contended by appellant's counsel. The relief asked by respondent is peculiarly equitable. It does not ask a judgment against appellant on the remaining notes, but asks that his rights be forfeited unless he pays the past-due notes within sixty days. The trial court correctly treated the proceeding as one in equity, and the verdict of the jury

as merely advisory. However, since it adopted that verdict as one of its findings, appellant was entitled to some relief unless he had waived his rights by his own acts in connection with the land. The decisive question in the case is whether the court was correct in holding that he had.

The first ground relied upon by the lower court to support its judgment was that appellant was guilty of laches, in that he did not rescind with sufficient promptness after learning the condition of the land. The court found that as early as 1913 he knew that the land contained alkali in sufficient quantities to harm its productiveness. The evidence is sufficient to justify this finding of the court.

The right of appellant to recover the purchase price is based upon the express warranty. When a right to recover money is based on an express contract, action is not barred until the period of the statute of limitations has expired, and this holds good even if the form of the action is equitable, unless, first, the delay is inexcusable, and second, special circumstances exist which make it inequitable to permit recovery. (*Just v. Idaho Canal & Improvement Co.,* 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381; *Gray v. Reeves,* 69 Wash. 374, 125 Pac. 162; 21 C. J., p. 254, note 85, p. 256, note 1.) Neither of these conditions obtained in the present case. When did the cause of action accrue? Not during the five years of respondents' possession, for it was entitled to that time to make its warranty good. The cause of action could not accrue until respondent delivered possession to appellant. We conclude that analogy obtains between this case and those involving a warranty of the fitness or quality of a chattel sold. There is a conflict in the decisions as to when a cause of action on such a warranty accrues. The sounder view is that it accrues when the purchaser has had a reasonable time to determine whether the article is as warranted. (*Sheehy Co. v. Eastern Importing & Mfg. Co.,* 14 App. D. C. 107, L. R. A. 1916F, 180, and note; *Felt v. Reynolds,* 52 Mich. 602, 18 N. W. 378.) Since appellant had knowledge of the character of the land when he took possession, his cause of action accrued then. He brought this

action within a few months.  This was not inexcusable deláy, and nothing had transpired since the cause of action accrued which would make recovery inequitable.

The court below also found that appellant had waived his right to any relief, first, by taking possession of the property; second, by the fact that his predecessors made payments and permitted respondent to improve the property under its contract, and, third, by leasing the land—all of which happened after he and his predecessors had knowledge of the condition of the land.  The evidence is sufficient to establish the first and second propositions of fact mentioned above.  It is not sufficient to establish the third, but is sufficient to show that, after going into possession of the land with full knowledge of its condition, and after demanding a return of the money and notes, appellant made a two-year cropping contract with certain Greeks, by which he agreed to give them the grain and hay raised upon the place in return for their labor in raising it.  While not a lease, it was an affirmative dealing with the place.

Counsel for respondent cites many cases to the effect that equity will not grant a vendee the right to rescind, if, after he has knowledge of the facts which entitle him to rescind, he deals affirmatively with the subject of the contract in such a way as to recognize its validity.  Acts on his part which have that effect are such as taking possession of the property and treating it as his own, making further payments, permitting the vendor to go to further expense and trouble, or leasing it.  The trial court applied this doctrine to the facts in this case.  In all the many cases cited by respondent's counsel, the ground of rescission is fraud, mistake or failure of consideration, and the right to recover the purchase price is implied in equity from the facts of the particular case, the rescission of the contract being considered a necessary condition precedent to a recovery of the purchase price.  In none of them is the right to recover the purchase price based, as in this case, upon an express covenant of warranty to pay back the purchase money in case the land is not of the quality warranted.  For this reason, we think

there is a clear distinction between this case and those cited. In the latter equity had to grant the right to rescind the contract in order to permit the vendee to recover his money, and that right was based upon a promise or liability implied by equity. In this case, if the vendee has any right, it is a legal right to recover the purchase money, based upon the express covenant of the vendor and its breach, and in this he does not have to rely upon any promise or liability implied by equity from the facts in the case. If the vendee recovers the purchase money, then a rescission of the contract is necessarily implied as a result. It is a result flowing from appellant's right to recover on the warranty, rather than a condition precedent to such recovery. It is more for the protection of the vendor than the vendee, because it would be inequitable to permit the latter to recover the purchase price and keep the land. The cancelation of the notes also necessarily follows as an equitable remedy, from the fact that appellant is entitled to recover the purchase price; it would be a vain proceeding to compel him to pay all the remaining notes and resort to another action to recover back the money so paid. The vendee's lien also flows from the appellant's right to recover upon the express warranty.

The rules in regard to warranty apply, rather than those in regard to recovery on an implied liability to return the purchase price arising out of fraud, mistake or failure of consideration. There seems to be no precedent as to an express warranty of the quality or character of soil. It has been held that going into possession of land under an executory contract of purchase, with knowledge of defects in the title, does not amount to a waiver of the right to sue for breach of a warranty of title or against encumbrances. (1 Warvelle on Vendors, 2d ed., sec. 329, p. 393; 11 Tiffany on Real Property, sec. 453, p. 1693, notes 45 and 46.) There are cases involving a warranty of the quality or character of chattels sold. A purchaser of a chattel, expressly warranted to be of a certain character and quality, does not lose the right to sue upon the warranty by accepting it, knowing it not to be as called for by the contract. (*North Alaska etc.*

*Co. v. Hobbs etc. Co.,* 159 Cal. 380, 113 Pac. 870, 120 Pac. 27, 35 L. R. A., N. S., 501, and note; *Davidson Bros. v. Smith,* 143 Iowa, 124, 121 N. W. 503; *Graff v. Osborne & Co.,* 56 Kan. 162, 42 Pac. 704; *Douglass etc. Co. v. Gardner,* 10 Cush. (Mass.) 88; *Maxted v. Fowler,* 94 Mich. 106, 53 N. W. 921; *McCormick Harvester etc. Co. v. Fields,* 90 Minn. 161, 95 N. W. 886; *Rosenbaum Grain Co. v. Pond etc. Co.,* 22 Okl. 555, 98 Pac. 331; *Eichbaum v. Caldwell Bros. Co.,* 58 Wash. 163, 108 Pac. 434; Williston on Sales, secs. 485–488.)

The contrary is held in Wisconsin and Georgia, but these decisions represent a minority and to our mind an unsound view. It is held by the majority rule that the purchaser by knowingly taking the defective article waives the right to rescind and return it. He has an election to keep it and sue for breach of the warranty, or to rescind and return it, and by accepting and using the article he elects the first remedy and waives the second. (*Noble v. Olympia Brew. Co.,* 64 Wash. 461, 117 Pac. 241, 36 L. R. A., N. S., 467, at pp. 472, 473, and notes; *Fox v. Wilkinson,* 133 Wis. 337, 113 N. W. 669, 14 L. R. A., N. S., 1107, and note; *Maxted v. Fowler, supra.*) There seems to be no reason why the above rules applying to a warranty of the quality of a chattel should not apply to a warranty of the quality of soil, as in the present case, and we hold that they do.

Going into possession under the contract, with knowledge of the alkaline character of the soil, was not a waiver of the right to sue upon the warranty. If rescission were a necessary condition precedent to appellant's right to recover his money, his action would be defeated. But, as above pointed out, it is not such a condition. Rescission in this case is necessarily implied from the terms of the warranty as a result of a recovery thereon, to avoid the injustice of permitting appellant to get back his money and keep the land. While the form of the complaint is somewhat confusing and misleading, the principal purpose of the action, properly analyzed, is to recover the purchase price on the warranty, and the other matters involved are consequences or results flowing therefrom. If the warranty had not fixed

the purchase price as the measure of damages for its breach, it could not be contended that appellant by going into possession had waived his right to recover on it. The fact that the warranty thus fixed the purchase price as the measure of damages cannot alter the situation beyond requiring rescission as a necessary result of recovery.

The last ground relied upon by the trial court was that appellant had not restored or offered to restore the possession of the premises. It has been suggested that he was unable to restore the premises by reason of the arrangement entered into with the three Greeks. That being a mere cropping contract, and not a lease, the Greeks had no interest in the property. Appellant could have restored the property, and their only recourse would have been against him personally. If a plaintiff seeks to rescind a contract on the ground of fraud or mistake, the general rule is that he must offer to restore possession. But when a contract is rescinded on account of the vendor's default, a purchaser who has paid any portion of the purchase money has an equitable lien upon the land as security therefor, and, when it is necessary for his protection to retain possession, he will not be required to restore it to the vendor before he can recover the amount paid. (*Taft v. Kessel,* 16 Wis. 291; *McIndoe v. Morman,* 26 Wis. 588, 7 Am. Rep. 96; *Perry v. Boyd,* 126 Ala. 162, 85 Am. St. 17, 28 S. W. 711; *Kiefer v. Rogers,* 19 Minn. 32; *Bullitt v. Eastern Ky. Land Co.,* 99 Ky. 324, 36 S. W. 16.)

C. S., sec. 6411, provides as follows: "One who pays to the owner any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back, in case of a failure of consideration."

This statutory lien would obtain in such a case as the present, and since it exists independent of possession, it would not be absolutely necessary for appellant to retain possession in order to protect his lien. Nevertheless, it seems appropriate to permit him to retain possession.

It has also been held in several well-considered cases that, while it is absolutely necessary for a vendee to restore possession, or offer to do so, before bringing suit, where he rescinds the contract by his own act, and sues for the purchase price, this is not necessary where, instead of rescinding the contract by his own act, he brings a suit in equity for the purpose of obtaining a decree of rescission, and where the court can, in its decree, impose such conditions as may be just. (*Hansen v. Allen,* 117 Wis. 61, 93 N. W. 805; *Jandorf v. Patterson,* 90 Mich. 40, 51 N. W. 352; *Smith v. Howlett,* 29 App. Div. 182, 51 N. Y. Supp. 910; *Allerton v. Allerton,* 50 N. Y. 670; *Vail v. Reynolds,* 118 N. Y. 297, 23 N. E. 301; *Thomas v. Beals,* 154 Mass. 51, 27 N. E. 1004; *In re Am. Knit Goods Co.,* 173 Fed. 480, 97 C. C. A. 486; *Ludington v. Patton,* 111 Wis. 208, 86 N. W. 571; 3 Williston on Contracts, sec. 1460.) This case, while not exactly the same, falls within the principle of the above decisions. Appellant did not rescind the contract by his own act, but a rescission necessarily follows in the event of his recovery.

It would have been better if he had avoided this question by alleging in his complaint that he was ready, willing and able to restore possession of the premises to the respondent upon being repaid the instalments of the purchase price, and cancelation of the notes, but, for the reasons and under the authorities given above, his failure to do so is not fatal to his right to recover.

We conclude from the evidence and the findings of the trial court that there was a breach of warranty; that, as damages therefor, appellant is entitled to recover the purchase price paid and that, as results flowing from such recovery, the court should have ordered the cancelation of the remaining notes and rescission of the contracts, and should have decreed to him a lien on the real estate to secure the recovery of the purchase money.

The judgment is reversed and the cause remanded, with instructions to make and enter findings of fact, conclusions of law and judgment in conformity with this opinion. Costs awarded to appellant.

Rice, C. J., and Budge, Dunn and Lee, JJ., concur.